# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MARK FAUCETTE,

                    Plaintiff,

-vs-                                                    Case No.  8:04-cv-2185-T-24EAJ

NATIONAL HOCKEY LEAGUE and
ANDREW VAN HELLEMOND, individually
and in his capacity of Director of Officiating
for the National Hockey League,

                    Defendants.
_____/

## ORDER

       This cause comes before the Court on Defendant National Hockey League's motion for

summary judgment (Doc. No. 55).[1]  Plaintiff filed a response in opposition thereto (Doc. No.

64).  With leave of the Court, Defendant National Hockey League filed a reply brief to Plaintiff's

response (Doc. No. 68).

## I.       Background

       Defendant National Hockey League ("NHL") is a joint venture organized as a not-for-

profit association consisting of thirty member professional hockey clubs located in the United

States and Canada.  NHL hockey games are officiated by referees and linesmen who are

members of the National Hockey League Officials' Association ("NHLOA")(Doc. No. 55, Exh.

A, Campbell Decl., ¶2).  Plaintiff's national origin is that he was born in the United States (Doc.

_____

       [1]On March 4, 2005, the Court entered an Order in which it dismissed Plaintiff's claims
against Defendant Andrew Van Hellemond without prejudice pursuant to Local Rule
3.10(a)(Doc. No. 13).

No. 64, Exh. 6,  Faucette Decl., ¶2).  Plaintiff was employed by Defendant NHL as an ice hockey

referee from 1985 until June 25, 2003 (Doc. No. 64, Exh. 6, Faucette Decl., ¶¶ 3 and 4).

Before each NHL season, NHL referees and linesmen (collectively "NHL officials")

participate in training camps, during which they are evaluated for physical fitness, conditioning,

and skating skills (Doc. No. 58, Faucette Depo., pp. 10 -11).  In addition, NHL officials are

evaluated by supervisors approximately eighteen to twenty times during the course of a season

(Doc. No. 64, Exh. 3, Transcript from Arbitration Hearing, pp. 35 - 36).  Furthermore, televised

NHL games are viewed by NHL personnel from a video room at the NHL office in Toronto

(Doc. No. 57, Campbell Depo., pp. 38 - 39, 63 and 107).  Both Colin Campbell ("Campbell"),

the Director of Hockey Operation for the NHL from August 1998 to the present, and Andrew

Van Hellemond ("Van Hellemond"), the NHL's Director of Officiating from 2000 until June

2004, watched many NHL games during a season by attending in person or watching video play

backs (Doc. No. 55, Exh. A., Campbell Decl., ¶3, Doc. No. 57, Campbell Depo., pp. 68 -69 and

107).  Each NHL official receives a mid-season evaluation in which he is  placed in one of four

groups, with Group 1 being those with the best evaluations and Group 4 being those with the

least favorable evaluations (Doc. No. 55, Exh. E and Doc. No. 64, Exh. 2, Arbitration Award, pp.

6- 7).  Those in Group 3 are considered to be in need of improvement (Doc. No. 55, Exh. E).

On January 25, 2001, Van Hellemond sent Plaintiff a letter advising Plaintiff that his

mid-season rating for the 2000 - 2001 season was in Group 1B[2] (Doc. No. 55, Exh. E).  On

---

[2]Van Hellemond's January 25, 2001, letter also included the following language: "[i]n
addition, each Group outlined above has been further categorized into sub-groups, A and B.  If
you are categorized in Group 1A for example, you are in the upper level of officials categorized
in Group 1.  Group 1B would be the lower level of this group."

September 28, 2001, at the beginning of the 2001 - 2002 season, Van Hellemond sent Plaintiff a letter advising him that, based on his recent declining performance, Plaintiff was potentially subject to performance-related dismissal at the end of the season (Doc. No. 55, Exh. C).[3]  On January 11, 2002, Van Hellemond sent Plaintiff a letter advising Plaintiff that his mid-season rating for the 2001 - 2002 season was in Group 3 (Doc. No. 55, Exh. D and Doc. No. 58, Faucette Depo., pp. 13 - 14).  In the January 11, 2002 letter, Van Hellemond provided Plaintiff with specific areas of concern (Doc. No. 55, Exh. D and Doc. No. 58, Faucette Depo., pp. 14 - 15).

When Plaintiff reported to training camp for the 2002 - 2003 season, his conditioning was not where it should have been for an NHL official (Doc. No. 58, Faucette Depo., p. 85).  He was overweight, received criticism for his physical condition and was advised he needed to work on his fitness level (Doc. No. 58, Faucette Depo., pp. 25 - 27 and 114 - 115).  Plaintiff had not met his 2002 target weight established by the NHL trainer (Doc. No. 58, Faucette Depo., pp. 30 and 114).  On September 27, 2002, at the beginning of the 2002 - 2003 season, Van Hellemond again sent Plaintiff a letter advising him that, based on his recent declining performance, Plaintiff was potentially subject to performance-related dismissal at the end of the season unless he improved (Doc. No. 55, Exh. F).

Throughout the 2002 - 2003 season, Plaintiff was evaluated by NHL supervisors on twenty separate occasions (collectively "Plaintiff's Game Evaluations").  On each occasion,

---

[3]Pursuant to the Collective Bargaining Agreement ("CBA") between the NHL and NHLOA, the NHL was required to provide at least one year's advance warning to senior ranking officials who potentially could be subject to dismissal for performance-related reasons (Doc. No. 55, Exh. C and Doc. No. 64, Exh. 8, ¶14c).

3

Plaintiff's performance was evaluated at the level "C" or higher[4] (Doc. No. 64, Exh. 1).  On

January 11, 2002, Van Hellemond sent Plaintiff a letter advising him that Plaintiff was placed in

Group 3 in his 2002-2003 mid-season evaluation (Doc. No. 64, Exh. 2, Arbitration Award, p.13).

In a letter dated June 25, 2003, Plaintiff was informed that the NHL was terminating his

employment for performance reasons (Doc. No. 55, Exh. G).  Pursuant to the Collective

Bargaining Agreement ("CBA") between the NHL and NHLOA, NHL officials may only be

fired for performance after the end of the NHL season and before July 15 (Doc. No. 64, Exh 8,

¶14b).

Prior to Plaintiff's termination, Van Hellemond met with the supervisors of officials to

discuss Plaintiff's performance, and the group recommended Plaintiff's termination to Campbell.

Campbell made the ultimate decision to terminate Plaintiff (Doc. No. 55, Exh. A, Campbell

Decl. ¶¶ 4 and 5 and Doc. No. Doc. No. 57, Campbell Depo., pp. 138 - 139 and 150).  Campbell

approved the termination of Plaintiff because Plaintiff had an attitude problem, came to camp out

of shape and exhibited poor conditioning, and had exhibited a "decrease in performance" (Doc.

---

[4]Plaintiff's Game Evaluations contain the following language regarding ratings:

A - When a referee makes the tough calls, puts a team down two men, washes out a
goal by being in the right position, handles pressure situations calmly, does not make
"phantom" calls.
C - This rating is an average.  A properly officiated game whereby the referee, in your
opinion, has done everything he has to do to control the game.  He made the calls that
needed to be called, did not raise the level of frustration, has a good feel for the game,
and lets flow develop.
E - A referee who manages the game, does not get involved, under or over calls the rules,
makes a tough situation tougher than it needs to be, turns a routine game into a tough
game, improper application of the rules and/or inconsistent judgment displayed relating
to the rules.

No. 57, Campbell Depo., pp. 117 - 122 and 151 - 152).

On July 18, 2003, Plaintiff appealed his termination (Doc. No. 55, Exh. H).  William

Daly ("Daly"), Executive Vice-President and Chief Legal Officer of the NHL, was the appeals

officer for terminations in 2003, and heard Plaintiff's appeal (Doc. No. 57, Daly Depo., pp. 7 -

9).  After consulting with all of the supervisors of officials, Daly upheld Plaintiff's termination

because he found that Plaintiff's performance was unsatisfactory (Doc. No. 57, Daly Depo., pp.

45 - 46).  In making his determination, Daly reviewed Plaintiff's Game Evaluations. (Doc. No.

57, Daly Depo., pp. 33 - 34).  Ten of the twenty Game Evaluations had "constructive criticism"

of Plaintiff's skating.  Plaintiff does not contend that these criticisms were not accurate or were

motivated by "an anti-American prejudice" (Doc. No. 58, Faucette Depo., pp. 51 - 52).  Plaintiff

also admits that in the season preceding his termination, he was slower than he had ever been in

his career (Doc. No. 58, Faucette Depo., p. 34), and that he has "never been a reindeer on ice"

(Doc. No. 58, Faucette Depo., p. 78).

On April 19, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC"), which alleged national origin discrimination based on

Plaintiff being from the United States (Doc. No. 55, Exh. K).  The NHL responded to the Charge

of Discrimination on June 18, 2004 (Doc. No. 55, Exh. L).  Plaintiff alleges the EEOC issued

Plaintiff a Notice of Right to Sue (Doc. No. 1, ¶22).[5]

On October 1, 2004, Plaintiff filed this action against Defendant NHL asserting claims

for unlawful discrimination based on national origin under Title VII of the Civil Rights Act 1964

---

[5]The Court notes that while the complaint references the Notice of Right to Sue as being
attached as Exhibit A, no Exhibit A was filed.

("Title VII"), 42 U.S.C. §2000e, *et seq.* (Count I), 42 U.S.C. §1981 (Count II), and Florida Civil Rights Act of 1992, FLA. STAT. §760.01, *et seq.* ("FCRA")(Count III).  Specifically, Plaintiff alleges Defendant NHL terminated his employment because of his national origin (Doc. No. 1, ¶19).  Plaintiff contends that only two referees were fired after the 2002-2003 season, and both had a national origin of the United States (Doc. No. 64, Exh.6, Faucette Decl., ¶14).  Plaintiff asserts that after the 2002 - 2003 season, there were thirty-one full-time NHL referees employed by the NHL, and that, only five of the thirty-one were born in the United States while the others were all Canadian born (Doc. No. 64, Exh. 6, Faucette Decl., ¶ 11 and Exh. 7).[6]

**II.     Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  See id.  When a moving party has discharged its burden, the non-moving party must

---

[6]The Court is unclear as to the source of Exhibit 7, which Plaintiff contends is the list of NHL officials which was current at the time he was fired.  Plaintiff bases his contention with respect to the national origin of the referees on his review of "the biographical profiles of these referees, as well as [his] personal knowledge gained from working with many of the individuals over a period of years" (Doc. No. 64, Exh. 6, Faucette Decl., ¶11).

6

then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989); see also Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness."  [citation omitted].  The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts.  When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion.  See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

7

**III.**     **Discussion**

The NHL asserts that it is entitled to summary judgment on Plaintiff's claims of employment discrimination based on national origin.  The NHL argues that 42 U.S.C. §1981 does not provide protection against discrimination on the basis of national origin.  With respect to Plaintiff's Title VII and FCRA claims, the NHL contends that Plaintiff cannot establish a prima facie case of discrimination.  Furthermore, the NHL argues that Plaintiff cannot rebut the NHL's legitimate, non-discriminatory reason for his discharge.

A.     Adverse Inferences

As an initial matter, Plaintiff contends that he is entitled to certain adverse inferences[7] based upon the NHL's failure to provide Plaintiff with the performance evaluations and other employment records of its on-ice officials (Doc. No. 64).  The NHL did not produce these documents because Plaintiff's discovery requests were untimely.  On November 8, 2005, this Court affirmed Magistrate Judge Jenkins' October 14, 2005, Order denying Plaintiff's Amended Motion to Compel or For Enlargement of Time and Plaintiff's Emergency Motion to Compel Production of Documents based on the fact that the requests were untimely (Doc. No. 50)(Doc. No. 60).

In support of his position that he is entitled to certain adverse inferences based upon the

---

[7]Plaintiff argues he is entitled to have the following material facts credited:

Canadian born referees received evaluations where they were evaluated at the less than acceptable level.

Canadian born officials were placed in Group 4 for their 2002 - 2003 mid-season evaluations.

No Canadian born full time NHL referees were fired after the 2002 - 2003 season notwithstanding having worse evaluations than Plaintiff.

NHL's failure to provide the evaluations of Canadian born officials, Plaintiff relies on Int'l Union (UAW) v. N.L.R.B, 459 F.2d 1329, 1336 (D.C. Cir. 1972) and Allstate Finance Corp. v. Zimmerman, 330 F.2d 740, 744 (5th Cir. 1964).  However, the Court finds Plaintiff's reliance on this cited authority largely inapposite under the facts of this case.  In fact, in Int'l Union, the court explained that "if the other party or the judge plays a role in suppression of the evidence, the force of the inference is dissipated" See id. at 1338.

As discussed in greater detail below, Plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Here, despite being aware of potential comparators since as early as August 5, 2004[8], Plaintiff failed to timely serve discovery requests on the NHL with respect to performance evaluations and other employment records of Canadian born NHL officials.  Plaintiff cannot now seek adverse inferences with respect to these documents when, the Court found, he failed to timely request them.  Therefore, Plaintiff is not entitled to any adverse inferences with respect to the non-production by the NHL of the performance evaluations and other employment records of the NHL's Canadian born on-ice officials.

B.    Plaintiff's Section 1981 Claim

42 U.S.C. §1981 provides: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. §1981(a).  The NHL argues that 42 U.S.C. § 1981

---

[8]On October 21, 2003, the NHLOA filed a grievance on behalf of Plaintiff with respect to the NHL's interpretation of the CBA's notice provisions (Doc. No. 55, Exh. J).  On August 5, 2004, during a hearing in the grievance proceeding, Van Hellemond testified with respect to senior officials who received evaluation ratings in Group 4 (Doc. No. 64, Exh. 3, Transcript from Arbitration Hearing, p. 209).

does not provide protection against discrimination on the basis of national origin.[9]  The Court

agrees.

Plaintiff's claims of employment discrimination are based solely on his national origin

and not his ancestry or ethnic characteristics.  A claim of discrimination based solely on the

place or nation of origin is insufficient under 42 U.S.C. §1981.  See St. Francis College v. Al-

Kharzraji, 481 U.S. 604, 613 (1987); see also Bedoya v. Hilti, Inc., 2004 WL 2857477, *3 (S.D.

Fla. 2004).  Accordingly, the Court finds that the NHL is entitled to summary judgment on

Plaintiff's §1981 claim (Count II).

C.     Plaintiff's Title VII Claim

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge

any individual, or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In this case, Plaintiff alleges

discrimination based on his national origin.  In a Title VII discrimination case, the plaintiff bears

the initial burden of establishing a prima facie case of discrimination.  See McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 802 (1973); see also Texas Dep't of Cmty. Affairs v. Burdine, 450

U.S. 248, 252 (1981).   A plaintiff may establish a prima facie case of discrimination by

producing direct, circumstantial, or statistical evidence of discrimination by an employer.  See

Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1555 - 1556 (11th Cir. 1995); see also

Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

---

[9]  In responding to the NHL's motion for summary judgment, Plaintiff did not address
this argument.

Because Plaintiff has not introduced any direct[10] or statistical evidence of employment discrimination based on national origin, the Court will limit its discussion to Plaintiff's proffered circumstantial evidence using the McDonnell Douglas framework.  In addition, Plaintiff relies solely on the McDonnell Douglas framework in responding to the NHL's motion for summary judgment (Doc. No. 64).  While Plaintiff argues that at the time he was fired, only five out of thirty-one NHL referees were born in the United States and two of those United States born referees were fired following the 2002 - 2003 season, it is unclear whether Plaintiff is attempting to introduce statistical proof of a pattern of discrimination.  To the extent that Plaintiff is attempting to utilize these allegations as statistical proof, the Court finds Plaintiff's statistical evidence has no probative value since Plaintiff has failed to place these statistics in a relevant context.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004)("Statistics without any analytical foundation are virtually meaningless")(citations omitted).

To demonstrate a prima facie case of disparate treatment, a plaintiff must show: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees, who were not members of the same protected class, more favorably; and (4) he was qualified to do his job.  See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999); see also Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel. University of South Florida, 342 F.3d 1281, 1289 (11th Cir. 2003).  If a plaintiff is able to meet the burden of establishing a prima facie case of discrimination, the employer must then come forward and articulate a legitimate, non-discriminatory rationale for the termination.  See McDonnell Douglas, 411 U.S. at 802.  Once the employer does so, a

---

[10]Direct evidence is evidence that proves the existence of a fact without inference or presumption.  See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002).

plaintiff must then show that the proffered reason was merely pretext for the defendant's discriminating acts.  See Burdine, 450 U.S. at 253.  The Court need not consider the last two steps of this burden shifting analysis because Plaintiff cannot establish a prima facie case.  See Egued v. Postmaster General of U.S. Postal Service, 2005 WL 3076591, *2 (11th Cir. 2005).[11]

The parties do not dispute that Plaintiff is a member of a protected class in that his national origin is the United States.  Furthermore, with respect to his termination, the parties agree that Plaintiff suffered an adverse employment action.  The NHL does dispute that Plaintiff was qualified for his job; however, for purposes of considering the NHL's motion for summary judgment, this Court will presume without deciding, that Plaintiff was qualified for the position he held.[12]  The NHL also disputes that Plaintiff can demonstrate that the NHL treated similarly situated employees, who were not members of the same protected class, more favorably.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  Maniccia, 171 F.3d at 1368 (quoting Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311(11th Cir. 1998)); see also Silvera v. Orange County School Board, 244 F.3d 1253, 1259 (11th Cir. 2001). The plaintiff must prove that the conduct for which he was disciplined was "nearly identical" to that engaged in by employees outside the protected class who were not disciplined.  See Nix v. WLCY/Rahall

---

[11]The Eleventh Circuit provides by rule that unpublished opinions are not considered binding precedent. They may be cited as persuasive authority, provided that a copy of the unpublished opinion is attached to or incorporated within the brief, petition or motion.  The NHL provided a copy of the Eleventh Circuit's November 17, 2005, unpublished opinion with its Notice of Filing Supplemental Authority in Support of Its Motion for Summary Judgment (Doc. No. 72).

[12]To the extent that Plaintiff held the position of NHL referee since 1985.

Communications, 738 F.2d 1181, 1185 (11th Cir. 1984).  Here Plaintiff has presented no evidence that the NHL treated Plaintiff differently than Canadian born NHL referees involved in or accused of the same or similar conduct.  Specifically, Plaintiff presents no examples of Canadian born NHL referees who were not discharged for similar or nearly identical performance problems.  Plaintiff's subjective belief that his discharge was based upon national origin is insufficient to establish a violation of the law.  See Pugh v. Heinrich, 695 F. Supp. 533, 542 (M.D. Fla. 1988), *affirmed*, 933 F.2d 1020 (11th Cir. 1991).

Plaintiff admits that he has no documentary evidence to demonstrate how the NHL's treatment of him compared with the NHL's treatment of Canadian born NHL referees (Doc. No. 64).  Notwithstanding, Plaintiff argues that there were senior officials who were evaluated as unsatisfactory and yet were not fired.  Specifically, Plaintiff relies on Van Hellemond's statement during Plaintiff's grievance proceeding that "I had given fours to some senior people like Mark Pare or Dan McCourt" (Doc. No. 64, Exh. 3, Transcript from Arbitration Hearing, p. 209).  Plaintiff attempts to use Canadian born officials Mark Pare and Dan McCourt as comparators.  However, in reviewing the biographical information submitted by Plaintiff with respect to Mark Pare and Dan McCourt, the Court finds that these individuals are not proper comparators because they are NHL linesmen, not NHL referees, and therefore are not similarly situated.  See Knight v. Baptist Hospital of Miami, 330 F.3d 1313, 1316 (11th Cir. 2003)("To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects")(citations omitted).  Furthermore, this Court has no evidence before it with respect to the conduct of Mark Pare and Dan McCourt which may have led to these purported unsatisfactory evaluations.

Plaintiff has failed to establish a prima facie case of employment discrimination based on national origin, since he cannot point to a similarly situated employee, outside of his protected class, who was treated more favorable than him.  Accordingly, the Court finds that the NHL is entitled to summary judgment on Plaintiff's Title VII claim (Count I).

Even assuming that Plaintiff can establish a prima facie case of discrimination, he has not shown that the NHL's proffered non-discriminatory reason for firing him is pretextual.  Pretext means more than an inconsistency or mistake, pretext is "a lie, specifically a phony reason for some action." Silvera, 244 F.3d at 1261.  A plaintiff cannot establish pretext by merely questioning the wisdom of the employer's reasoning, especially where "the reason is one that might motivate a reasonable employer." See Lee v. GTE Florida, Inc., 226 F.3d 1249, 1255 (11th Cir. 2000)(quoting Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir. 1996)). Finally, courts cannot reexamine an employer's business decisions; the court's inquiry is limited to determining whether the employer gave an honest explanation for its behavior.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

The NHL terminated Plaintiff for his poor performance.  The NHL produced evidence of a decline in Plaintiff's mid-season performance evaluations and Plaintiff's own acknowledgment that in the season prior to his termination he was slower than he had ever been in his career. Thus, the burden shifts to Plaintiff to put forth evidence demonstrating that the NHL's proffered legitimate, non-discriminatory reason is but a pretext to cover up an actual discriminatory motive.

In response to the motion for summary judgment, Plaintiff has presented no evidence from which a jury could infer that the NHL had a discriminatory motive in firing him.

Specifically, he has not presented evidence to demonstrate that he was fired because he was American born rather then because of poor job performance.  Accordingly, summary judgment in Defendant's favor is appropriate.

> D.      Plaintiff's FCRA Claim

With respect to Plaintiff's claims under the FCRA, "decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act . . . ."  Harper v. Blockbuster Entm't Corp, 139 F.3d 1385, 1387 (11th Cir. 1998).  Therefore, for the reasons stated above with respect to Plaintiff's Title VII claim, the Court finds that the NHL is entitled to summary judgment on Plaintiff's FCRA claim (Count III).

> E.      Plaintiff's Damages

Since the Court finds that the NHL is entitled to summary judgment on Plaintiff's claims of employment discrimination based on national origin, it is not necessary for this Court to reach the issue of whether Plaintiff failed to mitigate his damages or would be entitled to punitive or compensatory damages.

> **V.      Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)      Defendant National Hockey League's motion for summary judgment (Doc. No. 55) is **GRANTED**.

(2)      The Pretrial Conference in the above-captioned matter  scheduled for Friday, February 3, 2006 at 8:30 a.m. is hereby cancelled.

(3)      The Clerk is directed to enter judgment in favor of Defendant National Hockey League and to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida this 27th day of January, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record